Good morning, Honorable Justices. My name is Michael Parker. I represent Appellate Chico Martinez. With respect to this particular case, we believe that Mr. Martinez was denied a fair trial, and I'll cut to the point. We believe that jury instructions 18 and 26, as well as the court allowing the prosecution to change the charge to read from conjunctive to disjunctive, caused a lot of confusion, ambiguity, and error, which precluded Mr. Martinez from receiving a fair trial. With respect to the jury instructions, I point to jury instruction 26, which refers to the religious defense instruction, specifically paragraph 2. Just to make sure I got myself properly oriented, we're reviewing that on plain error. That is to say there was no objection at trial? Yes, Your Honor. Okay. We would just argue that because of paragraph 2, paragraph 2 indicated that the jurors could actually disregard counts 1 and 2 because of how the language was written in paragraph 2. Can I ask you a question about jury instruction 26, which I found confusing? There was some confusion about language, I think, throughout the case. But the last sentence says, It's not a defense to the crime of conspiracy to manufacture marijuana plants with an intent to distribute. That's referring to his claim of a Rastafarian religion. Was he charged with conspiracy to manufacture with an intent to distribute? I know that was a question the jury had. And I thought the judge answered that that wasn't the charge. It was just conspiracy to manufacture. Can you clarify that? Yes. I think that's created the ambiguity, because whether the intent to distribute went to the manufacturing or conspiracy to manufacture with the intent to distribute, what was being cultivated. Well, what's your understanding of what your client was actually charged with? Was he charged with conspiracy to manufacture marijuana plants, or was he charged with conspiracy to manufacture marijuana plants with an intent to distribute? Your Honor, that is a confusing issue. But I believe that, looking at the statute, it's conspiracy to manufacture 100 plants or more. And he was also accused of possession with intent to distribute. Exactly. So this jury instruction is, on its face, it's wrong, because it's giving an instruction on a crime that he wasn't charged with. Is that right? Jury instruction 18, correct. Is incorrect. As well as jury instruction 26, which caused the confusion, that is correct, Your Honor. I'm sorry, Judge Ikuda. Were you – I had a question, but I didn't know if you had another one. I have lots of them, but please go ahead. With respect to this instruction, which I think, as Judge Ikuda noted, may be with respect to a crime that your client wasn't accused of, isn't it more favorable to your client than he was entitled to? In other words, what the judge seemed to be saying is that there's a defense, there's a religious defense, but it's not a defense to two particular types of crimes. One is possession with intent to distribute, which your client was charged with, and the other was manufacture with intent to distribute, which your client wasn't charged with. So doesn't that imply that it is a defense to the crime that your client was charged with, which was manufacture without any intent of corruption? Was there any instruction that Rastafarian's – that Rastafarian religious defense would be applicable to the crime of conspiracy to manufacture, period? No. So the jury was uninstructed on that issue, but your client didn't – you didn't object. There was no objection to the lack of instruction on that. Well, there was a lot of bantering at the time, and in hindsight, yes, I did not demand or insist or object. So they only got an instruction that it's not a defense to the crime of conspiracy to manufacture with an intent to distribute, and then based on their question from the jury room, they were confused about what the nature of the charge was. Yes. So if it was manufacture with intent to distribute, then the judge had instructed them it's not a defense. If it was merely manufacture, they had no instruction on that point. Correct. But as to manufacture, let me understand your point. As to manufacture, it's not a defense, is it? It's a defense to possession, but not to manufacture. Am I right? It's the intent to distribute, which is the glitch, because – No, but I'm asking a different question. In your view, is the RCRA defense applicable to the charge that your client was actually charged with, which is conspiracy with intent to – conspiracy to manufacture? The religious defense is applicable to that first part. Yes. So you have this – Really, not just possession? It's applicable to manufacture? Yes. Conspiracy to manufacture? Yes. Okay. I'm sorry. Go ahead. No. I thought it wasn't applicable to conspiracy to manufacture, but merely to manufacture for personal possession. I think the controlling facts were, if he had a – if Mr. Martinez had an intent to distribute whatever he manufactured – I understand that. My question was – and I'm not sure I know the answer, so I'm relying on you and maybe the other side. Is the RCRA defense applicable to conspiracy to manufacture, which is what your client was charged with? I'm saying that the defense is available for that, yes. And what do you cite? Because it is possession. It's a possessionary function. So is there any case on point? I mean, you have a – A case – Go ahead. No, actually – I'm sorry. You have this expert declaration from Noel Erskine saying the growing and harvesting of cannabis is central to the practice of the Rastafari faith. So you have a declaration that manufacture, at least, is part of the religion, which I guess would be the key element. There's nothing here, though, on conspiracy. But is there any case on point specific to conspiracy? No, but factually, the conspiracy would have to have an intent element. And that's why I say that there was no – they did not sufficiently prove that there was a conspiracy between Shane Oyama and Mr. Chico Martinez because that would go to the intent element, and it's absent here, too. But thank you, yes. That's what we would argue on with respect to Dr. Noel Erskine, that there is – that defense is available to the manufacturing. With respect to the conspiracy aspect, it would be whether there was a meeting of the minds between, quote, conspirators to, in fact, intent to distribute. And that's where they fail to show facts. Let me understand your argument. I understand that you have an argument that there wasn't sufficient evidence to show a conspiracy. Put that aside for a second. Yeah. If there was sufficient evidence to show a conspiracy to manufacture, your position is that record defense is nonetheless available? Put aside intent to distribute, just an intent to manufacture. Well, that's the point, not putting aside the intent to distribute. There would have to have been, as part of that agreement, an intent to distribute. That's our argument. Well, but if your client was charged with conspiracy to manufacture, which is what he was charged with, I think, or cultivate, you don't need to show as part of that crime an intent to distribute, do you? Just as one of the elements of the crime don't require an intent to distribute. It just requires that two people get together with the agreement to manufacture or cultivate. Is that correct? Yes. Okay. With respect to that crime, the conspiracy to cultivate, without any proof of intent to distribute, I think, Judge, you could have asked you this question, but I'm not sure I understood the answer. Is there any case that says RCRA is available as a defense to that crime? Or not available. Yeah, or not available. Is there any case on point one way or the other? I'm not sure. And you may not know the answer to this, but is there any reason? I can't think of a reason why RCRA wouldn't be applicable to a conspiracy claim. I suppose that Rastafarians could get together and agree that they would grow sacramental marijuanas. But are you aware of any case talking about RCRA with respect to conspiracy claims as opposed to the underlying offense? Well, I guess anyone who is part of this alleged membership would have to share the same intent aspect. And I guess RCRA should apply to any alleged person that belongs to the membership. But I don't have the case. You're down to four minutes. Let's hear from the other side, and then we'll give you a chance to respond. Okay, thank you. May it please the Court. Good morning. Tom Mueller for the United States. Your Honor, the United States submits to the Court that the defendant received a fair trial, and the Court should affirm the judgment and the sentence imposed by the trial court. This is a pretty long sentence, right, 20 years? How long was the sentence? Ten, Your Honor, I thought. Ten? I'm misremembering then. It was the sentence, the statute is five years. He had a prior. There was an enhancement file, so he received ten years, but an eight-year super, two-term or supervised release. Okay. I either misread or misremembered. Fine. I'm sorry, Your Honor. I don't know. This is a plain error review because there was no objection to the form of the instruction. The United States submits to the Court there was no error at all. The defense has to show error, plain error, and we submit in this case because of the defendant's involvement during the instruction conference to the formulation of the instruction that there is no error at all. So can you tell me, was he charged with conspiracy to manufacture marijuana plants with an intent to distribute as in jury instruction 26, or was he charged with conspiracy to manufacture marijuana plants, period? Period. Okay. So he never got an instruction about the availability of a RFRA defense to the crime of conspiracy to manufacture marijuana plants. Is that correct? There is no, I would agree that there is no explicit instruction as to what the Court has just posed. I would argue, Your Honor, that as to the second paragraph of instruction 26, that in the second sentence where the Court said it is not a defense to the crime of conspiracy to manufacture, parenthesis, cultivate marijuana plants with intent to manufacture, there is no valid religious defense which the Court talks about in the first part of the instruction. So did you say it's not a defense as to a crime with which you have not been charged? Well, the the. So you think the negative implication. Well, yes, because the Court has engrafted on another element to this crime which he. But it's also not a defense for killing your child. I mean, it's not a defense to lots of things. But the negative pregnancy is pretty hard for a jury to draw out of that. Well, so the jury was confused, right? Because they sent in a question saying, is the crime, and the statute is not well written either, but they sent in a question, is the crime manufactured with intent to distribute or just manufacture? And so the Court said, maybe. I mean, maybe you can read from the Court's answer that it was just manufacturing. The Court's answer isn't all that clear either. So it's clear that the jury was confused. I guess my concern, of course, is they were never instructed on the availability of a RFRA defense to just manufacture. The jury was confused about what the crime actually was charged. And so the applicability of the jury instruction for his defense seems pretty confusing to me. But if the Court looks at the last sentence, Your Honor. Of which instruction? 26, Your Honor, the last sentence of the second paragraph. Isn't that the same? In another way of saying it, it is a defense to the crime of conspiracy to manufacture marijuana plants where there is no intent to distribute. Okay. So that's the best argument. Because he starts by saying, a Rastafarian's personal possession and use is a valid religious defense to possession of marijuana. So I guess you would, a reasonable jury could think, well, that's what it's a defense to. And then he goes on to say what it isn't a defense to. The negative pregnant in that context seems sort of weak to me. Well, I can argue, I can't argue what wasn't said. I can argue what was said. And I can argue that in this case, when we're talking about the explicit recognition of that Rastafarian's personal use and possession of marijuana being a valid religious defense to the possession of marijuana. And in this case, we're talking about the possession of marijuana where the evidence of possession is almost exclusively the cultivation aspect here. Because the defendant was never arrested. Isn't that a different word? I mean, possession versus manufacture. So in other words, that, you know, as I look at it now, that jury instruction 26 is two crimes that he wasn't charged with. Possession of marijuana and cultivation with intent to distribute. Yes, but the defense wanted that part of the instruction in this part of the instruction that was given as to their personal theory of the defense case. And it was a theory of the defense. The whole theory was that he was possessing the marijuana and growing the marijuana for his personal use. He never intended to distribute it to anyone, let alone his co-conspirator, Shane Oyama, contrary to what Mr. Oyama testified to, that he was going to get half the crop. So I agree. Is it as good as it should be or as it could be? No. Is RFRA a defense? Can there be a RFRA defense to a conspiracy charge? I think that was Judge Hurwitz's question. Yes, and I think the way the Court was going, I'm not aware of a case that says one thing one way or another, but I'm looking at the way that certainly Judge Ezra believed there could have been. In other words, if two Rastafarians get together and agree to grow marijuana for their own sacramental use, that conspiracy is not a conspiracy because it's not a crime. Right. Well, to put it differently, there's a RFRA defense. Yes, I think so. But I don't have a case that says that. But I think the way it talks, because certainly, you know, we started out with the expert saying or sharing of marijuana was part of the Rastafarian belief, a tenet of the religion. And he came back and said it was not. But here's the problem, then. I mean, and I understand this is a plain error case. Yes. Their basic defense, or his basic defense in this case, Mr. Martinez, was, yeah, we may have had a conspiracy to grow marijuana, but it was for personal use. We didn't intend to distribute. I mean, that's, as I read the record, that's what he says. That's what he says. He can't argue anything else. They're caught with the marijuana. Right. So, and he wants the jury told that there's a RFRA defense to that. And what the jury is instead told is it's not a defense to the crime of conspiracy to manufacture with intent to distribute. And I take your point that the negative pregnant to that is it may be a defense to the crime of manufacture without intent to distribute. But it's pretty confusing, isn't it? Well, the court tried to explain. It may have been confusing. They may have had a question on it. The court came back and tried to clear it up or, I believe, gave an answer, again, which the defense agreed to, had no objection to the court's answer to jury question number three. Again, related that the government had the burden of proving the evidence beyond a reasonable doubt or the elements of the crimes beyond a reasonable doubt. The defense was allowed to argue that he had to grow this. It was part of his religion, even though he didn't have the explicit instruction the court has keyed on, that he was allowed to argue that he had to grow this as part of his religion. The government had no right to impinge upon his religion. He was allowed to present that argument, even though he had, did not have that explicit instruction. We go back to the basic instruction on the crime, which I think is 16, is it? 18. I think, Your Honor. The government has only to prove beyond a reasonable doubt that the defendant conspired to manufacture or presents with intent to distribute, not both. This is what they told everybody. This is the instruction after the question. Do you think the jury was instructed that they had to find intent to distribute with respect to conspiracy to manufacture? They were not instructed that. Well, I'm wondering, because the question with the disjunctive there doesn't make it clear to me what the phrase with intent to distribute modifies. The jury is required to find the defendant conspired to manufacture or possess with intent to distribute, comma, not both. Do you think the jury may have understood with intent to distribute to modify manufacture also? Well, not after the third question. Not after the answer to the third question, I think, Your Honor. So you think, so the third question is exactly that. And the judge said, doesn't the judge say maybe? And then the judge says, I mean, you have to interpret the comma. That's right. Carefully interpret the comma in order to get a straight answer. I mean, that's the only real response he gives to their question. Manufactured, there was an agreement between two or more persons to manufacture marijuana plants, comma, or to possess with intent to distribute marijuana plants. And so you have to, the jury would have to understand the comma as being an answer that, no, it's just manufacture, period, which was their question. So I guess they could have understood that, but it's not super clear. If they did understand it that way, it helped him, not you. Yes. That's right. The court hasn't, as the court said, the trial court, as we argued, engrafted another intent or another element onto the crime, which was not the crime that's in the specifically charged indictment, because the indictment is clear. It's possession or conspiracy to manufacture or to possess with intent to distribute marijuana plants. But under plain air review, we urge the court to find that the defendant received a fair trial. He did not get the he did not offer a simple, he did not object to the instruction. He did not offer a different instruction. The defendant is not allowed, in any part, he's not allowed to, the explicit wording of a particular instruction. Well, I have to say, reading the record, it appears what happened really is the jury just didn't believe him. Yes. Whether it was a good defense or not, they just didn't believe him. They believed Shane Oyama rather than the defendant. And it was a question of credibility. He gave this story about his religion, and he did this only to have his personal use of marijuana, although Mr. Oyama testified, it had been explained to him that a plant could reduce a couple of pounds of marijuana. Mr. Oyama expected to get half the crop. Mr. Oyama not only shared the rent for the upstairs-downstairs, one unit, and half the utility bills, which became a substantial $1,000, but also put his own personal labors in upstairs. What's the best evidence that it wasn't for personal use? There was an officer who testified in his experience this quantity isn't for personal use. Was there any other evidence? Officer Hanohano, I think it was, or Hanohahene testified that based upon the size of the grow and the extent of the equipment that it was in the number of plants that it wasn't personal use in his position, I think the credibility of the defendant, his explanation of why he was doing this and about his religion and that it wasn't a valid religious defense, it wasn't truly held a religion in his. So the jury could have disbelieved it, but if we were looking at whether there was a lot of evidence that it was intended for distribution or sale, was it merely the officer's testimony about his experience? The officer, the pictures of the amount of the marijuana, the extent of the plants, the, of course, the particular investment that was put into this particular endeavor. He was asking the jury to believe that 50 pounds of marijuana was for his own personal use. That is to say, 2 pounds per plant, 25 plants, what was it, 100 plants? There were 111 plants by the time it got to 102, I believe, is what the chemist found, Your Honor. Yeah, he's got to be a pretty serious pothead for that to be for his personal use. Did Oyama testify that he intended to distribute? I don't remember. That was a question I had, too. Yeah. I don't think he testified. I didn't think so either. No. And the sharing of the crop between the two co-conspirators, would that be distribution? Yes. So if the ---- Distribution particularly to a non-Rastafarian. So if there was a conspiracy, so he was convicted of conspiracy, which necessarily includes another person, but you're saying that sharing would be deemed to be distribution? Based upon the amount of the row and the other information that we had that didn't come out at the trial, it's not in the record about the traffic to this certain place at night after hours. That didn't come out on the record. But we understood and we believed that there was actual sales that were going on. Yeah, yeah. But if that's not on the record ---- I'm sorry. I'm sorry. I shouldn't mention that. They would certainly a distribution to or a sharing with some other person would have been better. But not between the co-conspirators, right? Right. Other than a co-conspirator. What was the evidence about? And I thought I recalled it, but I want to make sure I recall it correctly. What was the evidence about the nature of the operation, physical? How big? What kind of equipment? There was testimony of a couple DEA agents and what they found, that it was and photographs that were submitted and talking about the photographs, what they depicted. One of the agents testified at the different stages. There were different rooms. There were different stages of growth. Some were in potting soil. Some were hydroponic in water. There was a CO2 delivery system. There were timed irrigations. There were timed lights. There was vents to take the excess heat off. There was also air conditioning. There was talk about the extent of the utilities, how the utility bills had gone up to over $1,000 a month. Both, I have to check the agent's name, but there were a couple of agents that were in there. Brenda McDonough, Agent McDonough, testified. She was the acting supervisor that day, and she took the pictures of the different plants and the different stages and how they were spread out in the supplement. We had supplemental excerpts of records of the photos of that and how each plant was labeled or numbered, I should say, to show that they had found 111 plants, but by the time it got back to the chemist or the forensic examiner at the scientific investigation section of the Honolulu Police Department that the root system had been broken or shaken off or destroyed. So that's how they got down from 111 to 102. I think you've answered my question. Okay. I think your time has expired. I think so. Thank you. Thank you. And you've saved some time. Thank you. Initially, I wasn't going to give much rebuttal, but two points. One is we just don't know whether the jury did not believe Mr. Martinez. We don't know exactly what he was convicted of based on this record. For one, if he was convicted of something other than what he was charged with, didn't it require an extra element rather than reduce the elements? In other words, if he was convicted of conspiracy with intent or conspiracy to manufacture with intent to distribute, that's favorable. In fact, the jury found more than they needed to. Well, when the government indicted with an and the defense was going on that basis all the way to the end and the court allowed to do the disjunctive, or you can Mr. Martinez could have been proved guilty based on manufacturing, conspiracy to manufacture, or possession with intent to distribute. Well, let me get back to Judge Hurwitz's question about whether if the jury misunderstood the instruction and considered whether he was guilty of manufacture with intent to distribute, then that made it tougher for the government to prove its case because  I guess my concern is that they have specific instructions saying that they couldn't consider the RFRA defense for that. So even though they had to prove the extra element, they couldn't consider the RFRA defense. That was the ambiguity because of the disjunctiveness and the break between manufacturing and conspiracy to intent to distribute. That created a big confusion, yes. But you do agree that there is no RFRA defense to manufacture with intent to distribute? Correct, yes. And so what was the evidence that he was not manufacturing the marijuana for personal use? I think the government indicates that just the nature of the business plus the officer's testimony. Did the defense have any rebuttal for that or any evidence that it was for personal use other than his testimony? Well, the government's own evidence was insufficient because there was no evidence to show a distribution amount. I mean, we can talk about two pounds pursuant to the sentencing guideline, but actually there was way less than that. Some of these so-called plants were seedlings no bigger than a half an inch. It had a stem and it had a root. Many of them were like so tiny they had to break them apart. None of them were in like mature phases. You didn't have 102 mature plants. Some were tiny. There was very little quantity-wise. But isn't that consistent with a commercial operation, that you're growing in phases? One of the things on this record, it's $1,000 a month of utilities to run the utilities where these weeds are grown, which means your client's spending $500 a month without regard to the cost of the plants to produce marijuana. Is that evidence of intent to distribute? With respect to that, Your Honor, the owner of the premises at Home Road Street, their son had recently passed away. They needed more money to so they allowed Mr. Martinez to fix the upstairs and the second son, Mr. Oyama, to store some of his business things downstairs. Mr. Martinez did testify that he felt sorry for the family. They were friends. And that that was in part his way to help. There was no distribution evidence. Really quickly, no paraphernalia. All the things in a search warrant which would support distribution, none of that. No ceiling, no scales, no balance, no baggies, no money, no ledgers, no evidence to support that this was To support actual distribution. Yeah, to support it. Okay. Thank you. Thank you very much. Your time's now expired. Thank you. I thank both sides for their arguments and safe travels and happy graduation. The case of Chico Martinez versus United States versus Chico Martinez is now submitted for decision.
judges: FLETCHER, IKUTA, HURWITZ